UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

LUIS ARROYO,

             Petitioner,

    - against -

WILLIAM LEE,

             Respondent.

------------------------------------------------------X

**OPINION AND ORDER**

**11 Civ. 1171 (SAS)**



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

Luis Arroyo ("petitioner" or "Arroyo") brings this habeas corpus

petition pursuant to 28 U.S.C. § 2254 ("section 2254") ("the "Petition"),

challenging his state court conviction entered on July 11, 2005, following a jury

trial in New York State Supreme Court, New York County.  Petitioner was

convicted of Assault in the First Degree (Penal Law § 120.10[1]), Attempted

Murder in the Second Degree (Penal Law §§ 110.00 and 125.25[1]), Burglary in

the Second Degree (Penal Law § 140.25[2], and Criminal Possession of a Weapon

in the Second Degree (Penal Law § 265.03[2]).[1]  Petitioner was sentenced to

twenty (20) years each for the assault and attempted murder counts, seven (7) years

---

[1]    *See* Memorandum of Law in Opposition to the Petition for a Writ of Habeas
Corpus ("Opp. Mem.") at 1.

for the burglary count, and fifteen (15) years for the weapon count, to be served concurrently.[2]

Arroyo challenges his conviction on the following grounds: (1) the evidence was legally insufficient to uphold the burglary conviction; (2) the trial court erred in precluding defense counsel from eliciting testimony that demonstrated "a key witness' untruthfulness;" (3) the trial court erred when it refused to allow defense counsel to impeach the victim with prior contradictory descriptions of the vehicle used in the shooting; (4) the prosecution improperly elicited proof of petitioner's post-arrest silence; (5) petitioner's trial counsel was ineffective because he did not adequately conduct a pre-trial investigation; (6) petitioner's trial counsel was ineffective in failing to adequately prepare for trial; and (7) trial counsel's ineffectiveness prejudiced the outcome of the trial.[3]   For the following reasons, the Petition is denied.

## II.   BACKGROUND

### A.   The Offense Conduct

---

[2]     *See id.*

[3]     *See* Petition for a Writ of Habeas Corpus ("Pet.") at 4.

By the year 2000, petitioner was in a relationship with Dorothy Perez.[4]   Perez and Alexandra Colon ("Colon") were best friends, and through Perez, Colon was introduced to defendant and defendant's brother, Kelly Camarena.[5]   At the time, defendant drove a black van with a distinctive red stripe around it, a spare wheel and a ladder in the back, and a railing on the top.[6]

In 2002, Colon began a romantic relationship with Camarena.  Despite dating his brother, the friendship between Colon and defendant deteriorated, as did the friendship between Colon and Perez.  Over time, the estranged friends stopped communicating altogether.  In 2004, Colon and Camarena ended their relationship, in part because of Colon's strained relationships with Perez and Arroyo.[7]   On October 26, 2004, Colon saw Perez in their neighborhood in Spanish Harlem and challenged Perez to a "fair fight" where they could settle their differences without their children present.[8]

---

[4]     *See* Opp. Mem. at 4 (citing Trial Transcript at 30 for *People of New York v. Luis Arroyo*, Supreme Court, New York County (2005)).  Hereinafter, numerical references preceded by "Tr." refer to the corresponding page in the Trial Transcript.

[5]     *See* Opp. Mem. at 4 (citing Tr. 29-30).

[6]     *See id.* (citing Tr. 33).

[7]     *See id.* (citing Tr. 36-37, 63-64).

[8]     *See id.* at 5 (citing Tr. 37-38, 65, 67, 69-70).

### 1.    The Confrontation in Colon's Apartment

At 9:00 p.m. on the same evening, while Colon was alone with her children in her apartment at 1905 Second Avenue, apartment 2G,[9] defendant knocked on her door.[10]  When Colon opened the door, Arroyo pushed the door open and forced his way inside.[11]   Defendant yelled at Colon for her earlier altercation with Perez, and then smacked her face with his open hand.[12]  Arroyo proceeded to chase Colon through the apartment, and left the apartment only when Colon succeeded in calling the police.[13]

On October 29, 2004, three days after the apartment incident, Colon informed her cousin, Richard Rodriguez, what had happened.[14]  Rodriguez then spoke with Arroyo on the phone, objecting to him getting involved in the dispute between Colon and Perez.  Rodriguez told Arroyo that he "didn't have to come in

---

[9]    The apartment in which Colon resided was owned by her friend, Ada Carrion.  Carrion was not home at the time of the incident. *See* Tr. 68.

[10]    *See* Opp. Mem. at 5 (citing Tr. 39, 68).

[11]    *See id.* (citing Tr. 40, 42,106).

[12]    *See id.* at 5-6 (citing Tr. 40, 43).

[13]    *See id.* at 6 (citing Tr. 40, 43-45, 48-49, 73-78).

[14]    *See id.* (citing Tr. 51, 88).

[Colon's] house and do that in front of her kids."[15]   The two men then decided to

meet in person on East 116th Street between First and Pleasant Avenues.

Rodriguez arrived first, and saw Arroyo get out of a black van with a red stripe and

a spare wheel and ladder in the back.[16]   The men spoke for a few minutes.

Petitioner told Rodriguez to "keep that bitch in her place."[17]   Rodriguez told

Arroyo that if he had any issue with Colon, that he should speak to Rodriguez who

would then speak to Colon.[18]

### 2.    The Shooting

After the two men parted ways, Rodriguez spoke to Colon near the

park at 105th Street and told her not to argue with Arroyo or Perez anymore, and to

just ignore them.[19]   Soon thereafter, Rodriguez's wife, Alba Cruz, joined him

together with their children.  Colon walked to a store down the street while

Rodriguez and Cruz watched their children and Colon's children play in the park.[20]

---

[15]    *Id.* (quoting Tr. 52-53).

[16]    *See id.* at 7 (citing Tr. 122-125).

[17]    *Id.* (quoting Tr. 125-126, 171).

[18]    *See id.*

[19]    *See id.* (citing Tr. 54-55, 128).

[20]    *See id.* (citing Tr. 55, 57, 131-32, 172).

Around dusk, Rodriguez crossed the street to get a light for his cigarette.[21]  At the same time, he heard a car screech and saw petitioner driving toward him in his black van.[22]  Rodriguez testified that the street was well lit, and that he instantly recognized Arroyo, who he had just seen earlier that afternoon.  Rodriguez saw Arroyo stop the car, stick his head out of the window and reach his right hand across his body to pull out a black gun.[23]  Cruz, who was standing on the opposite side of the street, testified that she had been alerted to the dark colored van because of the screeching sound.[24]  She further testified that the driver had made the movements Rodriguez had described, although she could not see the driver's face or what was in his hand from where she was standing. [25]

        When Rodriguez saw the gun, he started to run.  Arroyo fired four or five bullets, one of them hitting Rodriguez in the back, leaving him paralyzed.[26]  Cruz testified that she had seen the spare tire and ladder on the van as it drove

---

[21]     *See id.* at 8 (citing Tr. 135-36, 174, 204, 214-15).

[22]     *See id.* (citing Tr. 136, 138, 180).

[23]     *See id.* (citing Tr. 136, 138-140, 141, 149-154, 181).

[24]     *See id.* (citing Tr. 204, 208-209, 220-221).

[25]     *See id.* (citing Tr. 204-205, 210).

[26]     *See id*. (citing Tr. 136, 139-140, 180-181).

away.[27]  Cruz called for an ambulance while detectives from the 23rd Precinct

arrived at the scene to question Rodriguez.  When asked by Detective Michael

Pettit who had shot him, Rodriguez responded that he did not know and that he

needed to get to a hospital.[28]

        The next morning, Detective Pettit spoke with Rodriguez at the

hospital.  Rodriguez identified Arroyo as the shooter.[29]  Arroyo, who had been

picked up the night before after an anonymous informant had placed the black van

at the scene, was then arrested.[30]

### B.    Procedural History

### 1.    Direct Appeal

        Arroyo appealed his conviction to the Appellate Division, First

Department, raising four claims: (1) that the prosecution had not established some

of the elements of the burglary charge, namely that Arroyo knew that his entering

---

[27]    *See id.* (citing Tr. 206-207).

[28]    *See id.* at 9 (citing Tr. 143, 191, 227, 235, 143-145) (At trial, Rodriguez testified that he knew who had shot him, but did not say anything because he wanted to get revenge.  When he found out he was paralyzed and would not have that opportunity, he told the police his shooter's identity.).

[29]    *See id.* (citing Tr. 145-146, 250).

[30]    *See id.* (citing Tr. 229-231, 266-269, 274).

Colon's apartment was unlawful and that he had intended to commit a crime upon entry; (2) the trial court should have allowed the defense to impeach Colon's credibility by raising a purported suicide threat she had made in the past to get attention; (3) the trial court erred in precluding the defense from questioning Rodriguez about a previous description of the van he gave to the police in which the red stripe was omitted; and (4) that defendant's Fifth Amendment right to remain silent was violated when a police sergeant "attempted to interview him" when he arrived at the stationhouse.[31]

On February 20, 2007, the Appellate Division unanimously affirmed petitioner's conviction, holding that the verdict was consistent with the weight of the evidence.[32]  Additionally, the court found that petitioner's first claim regarding the legal sufficiency of the evidence in the burglary charge was unpreserved for appellate review, and that even if it were preserved, the court would have rejected it.[33]  The court also ruled that the trial judge properly precluded the line of questioning about Colon's purported "false statement" of a suicide threat, as it was

---

[31]    *See* Petitioner's Brief on Direct Appeal to the Appellate Division ("Appeal Br."), Ex. B to Opp. Mem.

[32]    *See People v. Arroyo*, 831 N.Y.S. 2d 126 (1st Dep't 2007).

[33]    *See id.*

irrelevant to any trial issue or to her credibility.[34]  Lastly, the court found that the trial court properly used its discretion with regard to the "minor descriptive detail" on petitioner's van.[35]   On June 19, 2007, the New York Court of Appeals denied defendant's motion for leave to appeal.[36]

### 2.    Motion to Vacate the Judgment

On October 30, 2006, while the direct appeal was still pending, petitioner moved for an order vacating his conviction pursuant to section 440.10 of the New York Criminal Procedure Law ("CPL").[37]  Arroyo's appellate counsel argued that Arroyo's trial attorney, Barry Weinstein, had provided ineffective assistance.  Specifically, petitioner argued that his trial counsel failed to (1) investigate Ada Carrion, a potentially helpful witness and owner of the apartment Colon was living in, who could vouch that Arroyo was welcome in the apartment; (2) investigate Arroyo's alibi defense that he was at a laundromat at the time of the shooting; and (3) adequately prepare for trial.   The People included an affidavit

---

[34]    *See id.*

[35]    *See id.*

[36]    *See People v. Arroyo*, 9 N.Y.3d 839 (2007).

[37]    *See* Petitioner's Motion Filed with the Trial Court to Vacate His Conviction Pursuant to N.Y. C.P.L. § 440.10 ("Mot. to Vacate"), Ex. I to Opp. Mem.

from Weinstein explaining the decisions Arroyo was contesting.[38]  Specifically,

Weinstein explained that he could not and would not use Arroyo's alleged alibi

because Arroyo had confessed to Weinstein that he had in fact shot Rodriguez.[39]

Because he knew the alibi to be false, Weinstein argued that it would have violated

his ethical obligations to suborn perjury.[40]  Additionally, Weinstein explained that

he did not call Carrion as a witness to show that Arroyo was welcome in her

apartment because Carrion was not home when Arroyo forced his way inside and

confronted Colon.[41]  Therefore, regardless of ownership, Carrion's proposed

testimony could not have established that petitioner had been welcome to enter the

apartment that night.[42]

In a written decision dated July 9, 2008, the court denied petitioner's

motion to vacate.[43]  The court relied on CPL section 440.30(4)(b), holding that the

---

[38]   *See* People's Affidavit in Response to Defendant's N.Y. C.P.L. § 440.10 Motion, Ex. M to Opp. Mem.

[39]   *See* Barry Weinstein Affirmation ("Weinstein Aff."), Ex. N to Opp. Mem.

[40]   *See id.*

[41]   *See id.*

[42]   *See id.*

[43]   *See* July 9, 2008 Decision and Order ("July 2008 Order"), Ex. R to Opp. Mem.

-10-

motion did not have the necessary sworn allegations of fact.[44]  The court noted the
absence of an affidavit from Carrion which rendered many of the assertions in the
motion inadmissible hearsay.[45]   The court also denied the claims on the merits.
Subsequently, petitioner was granted permission to appeal the denial.  On October
12, 2010, the Appellate Division affirmed the trial court's decision, rejecting the
claims of ineffective assistance of petitioner's trial counsel.  The court found that
petitioner's claims "whether viewed individually or collectively, did not deprive
[petitioner] of a fair trial, affect the outcome of the case, or cause [petitioner] any
prejudice."[46]  On January 27, 2011, the New York Court of Appeals denied
petitioner's application for leave to appeal.[47]  Arroyo filed this timely habeas
petition on February 8, 2011.

## III.   LEGAL STANDARDS

### A.   Deferential Standard for Federal Habeas Review

This petition is governed by the Antiterrorism and Effective

---

[44]     *See id.* at 7.

[45]     *See id.* at 8.

[46]     *People v. Arroyo*, 908 N.Y.S. 2d 665, 667 (1st Dep't 2010).

[47]     *See People v. Arroyo*, 16 N.Y.3d 741 (2011).

Death Penalty Act of 1996 (the "AEDPA"). The AEDPA provides that a federal court may grant a writ of habeas corpus to a state prisoner only if the state court's adjudication of a particular claim, on the merits in a state court proceeding, resulted in a decision that: (1) "'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;'"[48] or (2) "'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[49]

With respect to subsection 2254(d)(1), the Supreme Court has explained that a state court decision is "contrary to" clearly established federal law in the following instances:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.[50]

---

[48]     *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259 (2010) (quoting 28 U.S.C. § 2254(d)(1)). *Accord Knowles v. Mirzayance*, 556 U.S. ___, ___, 129 S. Ct. 1411, 1412 (2009)).

[49]     *Berghuis*, 130 S. Ct. at 2259 (quoting 28 U.S.C. § 2254(d)(2)).

[50]     *Williams v. Taylor*,  529 U.S. 362, 405 (2000).

With regard to the "unreasonable application" prong, the Supreme Court has

 stated:

> [A] state-court decision can involve an "unreasonable
> application" of this Court's clearly established precedent in
> two ways.  First, a state-court decision involves an
> unreasonable application of this Court's precedent if the
> state court identifies the correct governing legal rule from
> this Court's cases but unreasonably applies it to the facts of
> the particular state prisoner's case.  Second, a state-court
> decision also involves an unreasonable application of this
> Court's precedent if the state court either unreasonably
> extends a legal principle from our precedent to a new
> context where it should not apply or unreasonably refuses
> to extend that principle to a new context where it should
> apply.[51]

In order for a federal court to find a state court's application of

Supreme Court precedent to be unreasonable, the state court's decision must have

been more than incorrect or erroneous: "[t]he state court's application of clearly

established law must be *objectively unreasonable*."[52]  This standard "'falls

somewhere between merely erroneous and unreasonable to all reasonable

---

[51]     *Id.* at 407.

[52]     *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (emphasis added).  *Accord Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (stating that "[t]his distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review") (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007));  *Williams*, 529 U.S. at 409;  *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

jurists.'"[53]  While the test requires "'[s]ome increment of incorrectness beyond

error, . . . the increment need not be great; otherwise *habeas* relief would be limited

to state court decisions so far off the mark as to suggest judicial incompetence.'"[54]

Furthermore, section 2254(d) applies to a defendant's habeas petition even where

the state court order does not include an explanation of the court's reasoning.[55]

> Where a state court's decision is unaccompanied by an
> explanation, the habeas petitioner's burden still must be
> met by showing there was no reasonable basis for the state
> court to deny relief.  This is so whether or not the state
> court reveals which of the elements in a multipart claim it
> found insufficient, for [section] 2254(d) applies when a
> 'claim,' not a component of one, has been adjudicated.[56]

Section 2254(d) also applies where a state court does not explicitly state in its

opinion that it is adjudicating a claim on the merits.[57]  "When a federal claim has

---

[53]     *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

[54]     *Jones*, 229 F.3d at 119 (quoting *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (citations omitted)).

[55]     *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

[56]     *Id.* (citing, *inter alia*, *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001) ("[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent.")).

[57]     *See id.*

been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[58]

Section 2254(d)(2) states that habeas relief may be granted where adjudication of a claim by a state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[59]  With respect to subsection 2254(d)(2), the Supreme Court has observed that although the term "unreasonable" is difficult to define, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."[60] Moreover, under section 2254(e)(1), a determination of a factual issue by a State court "shall be presumed to be correct" and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."[61]  In *Wood v. Allen*, the Supreme Court granted certiorari to resolve, *inter alia*, the question of "whether, in order to satisfy § 2254(d)(2), a petitioner must establish

---

[58]     *Id.* at 784-85.

[59]     28 U.S.C. § 2254(d)(2).

[60]     *Wood v. Allen*, 130 S. Ct. 841, 849 (2010).

[61]     28 U.S.C. § 2254(e)(1).

only that the state-court factual determination on which the decision was based was 'unreasonable,' or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence."[62]   Unfortunately, the Supreme Court did not reach the issue of "whether § 2254(e)(1) applies in every case presenting a challenge under § 2254(d)(2)" because the "reasonableness of the state court's factual determination . . . [did] not turn on any interpretative difference regarding the relationship between these provisions."[63]   Although the Second Circuit has not yet addressed this issue, at least one other court has determined that "[b]oth provisions apply independently to all habeas petitions."[64]   Therefore, "'[t]o secure habeas relief, petitioner must demonstrate that a state court's [factual] finding . . . was incorrect by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), *and* that [it] was 'objectively

---

[62]     *Wood*, 130 S. Ct. at 848.

[63]     *Id.* at 849 ("We conclude that, under § 2254(d)(2), the state court's finding that Wood's counsel made a strategic decision not to pursue or present evidence of Wood's mental deficiencies was not an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings.  We therefore do not need to decide whether that determination should be reviewed under the arguably more deferential standard set out in § 2254(e)(1).").

[64]     *Winston v. Kelly*, 592 F.3d 535, 555 (4th Cir. 2010).

unreasonable' in light of the record before the court.'"[65]

## B.    Exhaustion Requirement

Section 2254 provides that a habeas petition by a state prisoner may not be granted unless "the applicant has exhausted the remedies available in the courts of the State."[66]  In order to satisfy the exhaustion requirement, a prisoner must have "'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts,'"[67] either in the form of "explicit constitutional arguments" or simply by "alleging facts that fall 'well within the mainstream of constitutional litigation.'"[68]

## C.    Procedural Bar

Under the independent and adequate state law doctrine, if the last state court to render judgment clearly and expressly states that its judgment rests on a

---

[65]     *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003) (alterations, ellipses, and emphasis in original)).

[66]     28 U.S.C. § 2254(b)(1)(A).

[67]     *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)).

[68]     *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir. 1995) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 192 (2d Cir. 1982) (en banc)).

state procedural bar, federal habeas review is precluded.[69]  In fact, "[t]he Second Circuit has made clear that 'federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.'"[70]  Federal habeas review of procedurally barred claims is foreclosed unless the prisoner can demonstrate either: (1) "'cause for the default and actual prejudice;'" or (2) "'that failure to consider the claims will result in a fundamental miscarriage of justice.'"[71]  Showing cause for a default requires a petitioner to put forth some objective factor external to the defense, explaining why the claim was not raised previously.[72]  Furthermore, a habeas petitioner may invoke the fundamental miscarriage of justice exception to the procedural bar rule only if

---

[69]     *See Jones v. Duncan,* 162 F. Supp. 2d 204, 210 (S.D.N.Y. 2001) (citing *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997)).

[70]     *Id.* (quoting *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990)).  *Accord, e.g., Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis*, 188 F.3d 71, 77-82 (2d Cir. 1999); *Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996).

[71]     *Glenn*, 98 F.3d at 724 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  *Accord Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Epps v. Commissioner of Corr. Servs.*, 13 F.3d 615, 617-18 (2d Cir. 1994).

[72]     *See Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).

he can demonstrate actual innocence.[73]

### D.   Ineffective Assistance of Counsel Under *Strickland v. Washington*

To succeed on a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner "must demonstrate (1) that his attorney's performance 'fell below an objective standard of reasonableness,' and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[74]  "To satisfy the first prong – the performance prong – the record must demonstrate that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'"[75]  The inquiry under the performance prong is "contextual" and "asks whether defense counsel's actions were objectively reasonable considering all the circumstances."[76]  "In assessing the attorney's

---

[73]    *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

[74]    *Wilson v. Mazzuca*, 570 F.3d 490, 501 (2d Cir. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).  *Accord Smith v. Spisak*, 130 S. Ct. 676, 685 (2010).

[75]    *Wilson*, 570 F.3d at 502 (quoting *Strickland*, 466 U.S. at 687).

[76]    *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000) (citing *Strickland*, 466 U.S. at 688).

performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."[77]

In determining what constitutes objective reasonableness, courts look to "'[p]revailing norms of practice as reflected in American Bar Association standards.'"[78]  Attorney errors that fall below an objective standard of reasonableness "include omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness."[79]  "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"[80] "'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"[81]

To satisfy the second prong – the prejudice prong – a "defendant must

---

[77]    *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland,* 466 U.S. at 690).

[78]    *Purdy*, 208 F.3d at 44 (quoting *Strickland*, 466 U.S. at 688).

[79]    *Wilson*, 570 F.3d at 502 (citation omitted).

[80]    *Knowles*, 129 S. Ct. at 1420 (quoting *Strickland*, 466 U.S. at 689).

[81]    *Id.* (quoting *Strickland*, 466 U.S. at 688).

show that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[82] In assessing prejudice, courts review the record to determine the impact of the alleged ineffectiveness within the context of the entire trial.[83]   In other words, the "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt."[84]  Finally, a finding of lack of prejudice may precede, or preempt, the quality of representation inquiry.  The Supreme Court has stated:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of

---

[82]    *Strickland*, 466 U.S. at 694 (emphasis added).

[83]    *See Berghuis*, 130 S. Ct. at 2264 ("In assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'") (quoting *Strickland*, 466 U.S. at 695).

[84]    *Strickland*, 466 U.S. at 695.

> an ineffectiveness claim on the ground of lack of sufficient
> prejudice, which we expect will often be so, that course
> should be followed.  Courts should strive to ensure that
> ineffectiveness claims not become so burdensome to
> defense counsel that the entire criminal justice system
> suffers as a result.[85]

Thus, if a court finds no prejudice, it need not engage in the often thorny

inquiry regarding the adequacy of counsel's performance.

### E.    Harmless Error Analysis

In order to obtain habeas relief, a petitioner must demonstrate that any

constitutional error "had substantial and injurious effect or influence in

determining the jury's verdict."[86]  If a trial judge improperly admits evidence, such

error may be deemed "harmless" even if the reviewing court finds that the evidence

against the petitioner was not necessarily overwhelming, but only "weighty."[87]

Confrontation Clause violations are subject to the same "harmless

error" analysis as evidentiary errors.[88]  The Confrontation Clause is violated when

a petitioner is "prohibited from engaging in otherwise appropriate cross-

---

[85]    *Id.* at 697.

[86]    *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation marks omitted).

[87]    *Samuels v. Mann*, 13 F.3d at 522, 527-28 (2d Cir. 1993).

[88]    *See United States v. Dhinsa*, 243 F.3d 635, 649, 656 (2d Cir. 2001).

examination designed . . . to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness."[89] However, "'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'"[90]  This right is not absolute, and it "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."[91]

  To determine whether a Confrontation Clause violation is harmless error, federal courts examine "many factors, including 'the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.'"[92]

## IV.   DISCUSSION

---

[89] *Van Arsdall*, 475 U.S. at 680 (citation and quotation marks omitted).

[90] *Id.* at 683 (quoting *Delaware v. Fensterer,* 474 U.S. 15, 20 (1985) (*per curiam*) (emphasis in original)).

[91] *Rock v. Arkansas*, 483 U.S. 44, 55 (1987).

[92] *Gutierrez v. McGinnis*, 389 F.3d 300, 308 (2d Cir. 2004) (quoting *Van Arsdall*, 475 U.S. at 684).

**A.    Petitioner's Insufficient Evidence Claim Is Procedurally Barred**

Petitioner alleges that there was insufficient evidence to support his conviction for the burglary charge.[93]  Specifically, Arroyo argues that the People did not prove that he had knowingly entered Colon's apartment unlawfully or that he had a pre-existing intent to commit a crime when he entered.[94]  The Appellate Division found that Arroyo's insufficient evidence claim was procedurally barred.[95]  Under New York law, "in order for a criminal defendant to preserve, for appellate review, a question of law as to the sufficiency of evidence he must make a timely motion to dismiss that is 'sufficiently specific' to alert the trial judge to the substance of his argument."[96]  Here, petitioner never moved to dismiss on the ground that the evidence did not support the burglary charge, but simply moved for dismissal before summation based on the People's failure to present a prima facie case.[97]  This is not sufficient to alert the trial judge to petitioner's specific objections to the burglary evidence.   Therefore, this claim is procedurally barred.

---

[93]    *See* Pet. at 2, 4, 12.

[94]    *See id.*

[95]    *See Arroyo*, 831 N.Y.S. 2d 126.

[96]    *People v. Gray*, 86 N.Y.2d 10, 19-21 (1995)).

[97]    *See* Tr. 294.

Even if this claim were not barred, Supreme Court precedent holds that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[98]   Among the testimony the jury heard were facts acknowledging that petitioner and Colon were not friends, and that there had been open animosity between Colon and Arroyo's girlfriend, Perez.  Colon testified that while she had opened the door slightly to see what Arroyo wanted,  he forced his way into the apartment over her objection.  The jury had the opportunity to listen to the 911 tape after Arroyo had smacked Colon in the face and chased her around the apartment.  The trial judge informed the jury of the necessary elements the prosecution had to establish for Arroyo to be found guilty of this offense.  In sum, the prosecution presented sufficient evidence for a rational trier of fact to find him guilty of second degree burglary.

Finally, for claims that are procedurally barred, there are exceptions in which claims may still be reviewed.  But Arroyo has not established a fundamental miscarriage of justice, such as a proffer of evidence that he was actually innocent of the crime.[99]   Nor does petitioner allege that there is cause for his default.

---

[98]     *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

[99]     *See Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Because Arroyo has not made such a showing, his insufficient evidence claim is dismissed.

### B.    Petitioner's Improper Curtailment of Cross-Examination Claim Is Dismissed

Arroyo asserts that he was denied his rights under the Confrontation Clause of the Sixth Amendment because the trial court improperly precluded defense counsel from eliciting testimony on cross examination that Colon had once made a suicide threat to her then-boyfriend, which would have demonstrated that her testimony had been untruthful.  However, this Constitutional claim was not properly exhausted in state court.   "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."[100]   Petitioner failed to present a federal constitutional argument or even cite to any federal cases regarding this claim in his direct appeal. Specifically,  petitioner did not apprise the state court that the evidentiary ruling of which he complained was not only a violation of state law, but denied him his rights under the Sixth Amendment.  Because this claim was never exhausted and his opportunity to raise it in state court has expired, the claim is procedurally

---

[100]    *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).

defaulted.[101]

   Even if this claim were not procedurally barred, the Supreme Court

has stated, "trial judges retain wide latitude insofar as the Confrontation Clause is

concerned to impose reasonable limits on such cross-examination based on

concerns about, among other things, harassment, prejudice, confusion of the issues,

the witness' safety, or interrogation that is repetitive or only marginally

relevant."[102]   In this case, the Appellate Division stated that "the alleged false

statement was irrelevant to any trial issues, and it was not an act of misconduct

affecting the witness's credibility."[103]   This finding is not contrary to, nor does it

involve an unreasonable application of clearly established Federal law, nor would

the inclusion of this testimony have altered the outcome of the trial.  Petitioner's

trial counsel conducted an otherwise thorough cross examination of Colon.

Accordingly, Arroyo's ground for habeas relief based on the curtailment of

Colon's cross-examination is denied.

  **C. Petitioner's Second Confrontation Clause Claim Is Also Dismissed**

---

[101] *See Smith v. Duncan*, 411 F.3d 340, 347 (2d Cir. 2005).

[102] *Van Arsdall*, 475 U.S. at 679.

[103] *Arroyo*, 37 A.D. 3d 301.

Next, Arroyo asserts that he was denied his constitutional rights under the Confrontation Clause of the Sixth Amendment when the trial court improperly curtailed counsel's cross-examination of Rodriguez concerning his prior description of Arroyo's van, in which he had not mentioned the red stripe.[104]   The People maintain that the claim has not been exhausted, as petitioner never presented this evidentiary claim as a violation of his constitutional rights.[105]   For the same reasons discussed in the preceding section, this claim is unexhausted and procedurally defaulted.[106]

Assuming, *arguendo,* that this claim were exhausted, Arroyo's allegations of inconsistencies are based solely on the fact that Rodriguez did not mention the stripe in one of his statements to the police.[107]   In certain circumstances, "prior silence concerning critical facts might be deemed

---

[104]   *See* Reply Memorandum of Law in Support of Petitioner's Habeas Corpus Petition ("Reply Mem.") at 16-17.

[105]   *See* Opp. Mem. at 26-30.

[106]   *See Duncan*, 411 F.3d at 347; *see also Henry*, 513 U.S. at 365-66.

[107]   *See Arroyo*, 37 A.D. 3d at 301 ("The court properly exercised its discretion in precluding impeachment of the shooting victim regarding his possible omission of a minor descriptive detail of the assailant's van, which, insofar as can be discerned from the record, had not even been the subject of questioning when the victim provided a description to police.") (citing *People v. Duncan*, 46 N.Y. 2d 74, 84 (1978); *People v. Bornholdt*, 33 N.Y. 2d 75 (1973)).

inconsistent with later testimony which includes their purported recollection."[108]

However, "the failure to mention those matters must conflict with that which is

later recalled."[109]   As in this case, when "the belatedly recollected facts merely

augment that which was originally described, the prior silence is often simply too

ambiguous to have any probative force."[110]   The fact that Rodriguez had been silent

as to the red stripe in his prior description of the van does not conflict with the

details he recalled at trial.   Therefore, under AEDPA, petitioner has failed to show

that the state court's curtailment of this cross-examination was contrary to, or

involved an unreasonable application of, clearly established Federal law.

### D.      Arroyo's Claim that the Prosecution Improperly Elicited Proof of Petitioner's Post-Arrest Silence Is Procedurally Barred

Next, Arroyo argues that the People elicited improper testimony that

the police had attempted to interview petitioner when he was brought into the

stationhouse.[111]   However, the First Department held that "[d]efendant's

remaining arguments . . . are unpreserved and we decline to review them in the

---

[108]    *United States. v. Leonardi*, 623 F.2d 746, 756 (2d Cir. 1980).  *Accord Bowers v. Walsh,* 277 F. Supp. 2d 208, 224 (W.D.N.Y. 2003).

[109]    *Leonardi,* 623 F.2d at 756.

[110]    *Id.*

[111]    *See* Tr. 260-270.

interest of justice."[112]   These "remaining arguments" include Arroyo's claim that

the prosecution improperly elicited testimony of Arroyo's silence during a post-

arrest interview.[113]   Arroyo argues that the Second Circuit has held that dismissal

of  "all remaining claims" for procedural default *or* failure on the merits is not a

clear and express statement constituting a state procedural bar.[114]   Therefore, he

asserts that this claim is not barred from federal habeas review.[115]   However, in this

case, the appellate court found that the claim was unpreserved *and* that if the court

were to review the claim, it would reject it.[116]   Thus, the First Department's

decision constitutes an adequate and independent state ground barring federal

habeas review.[117]   Moreover, Arroyo has failed to make a showing of cause for his

failure to raise the claim and actual prejudice as a result of the alleged violation or

---

[112]     *Arroyo*, 831 N.Y.S. 2d at 126.

[113]     Cannon's testimony stated that after Arroyo was removed from the van by the police, "[w]e brought him back to the two-three and attempted to interview him." Tr. 270.  The prosecutor then moved on to a new line of questioning.  The prosecutor did not elicit any further testimony about what was or was not said in the post-arrest interview.

[114]     *See Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000).

[115]     *See* Reply Mem. at 7.

[116]     *See Arroyo*, 831 N.Y.S. 2d at 126.

[117]     *See Fama*, 235 F.3d at 810-11.

that failure to consider the claim will result in a fundamental miscarriage of justice.[118]   Therefore, Arroyo's claim is procedurally barred.

### E.   Arroyo's Ineffective Assistance of Counsel Claims Are Procedurally Barred

Petitioner's remaining claims for habeas relief fall under the category of ineffective assistance of counsel.   Specifically, petitioner argues that his trial counsel was ineffective because: (1) he did not adequately conduct a pre-trial investigation; and (2) he failed to adequately prepare for trial.  Petitioner further argues that his counsel's ineffectiveness prejudiced the outcome of the trial.

Arroyo raised the first two claims in his section 440.10 Motion.  In particular, petitioner argued that his trial counsel should have interviewed Ada Carrion to prove that Arroyo was permitted to be in the apartment the night of the burglary.  Further, petitioner argued that failure to investigate Arroyo's alibi was a fatal error.  Additionally, Arroyo maintained that Weinstein did not adequately prepare for trial in general.

The state court rejected these claims under section 440.30(4)(b), because defendant's moving papers did not contain "sworn allegations [of fact]

---

[118]    *See Coleman*, 501 U.S. at 750.

substantiating or tending to substantiate all the essential facts."[119]   Additionally, the appellate court rejected the investigator's statement as to Carrion's alleged understanding with Arroyo that he was free to enter her apartment as inadmissible hearsay.[120]   The court also rejected Arroyo's assertion that his trial counsel had failed to properly conduct a pre-trial investigation when he decided not to investigate Arroyo's alleged alibi of being at the laundromat at the time of the shooting.[121]   The court noted the affidavit submitted by Weinstein stating that Arroyo had confessed to the crime.   Thus, presenting or investigating a false alibi witness would be contrary to Weinstein's ethical obligations.[122]   Additionally, the court found that that the allegation that Weinstein failed to properly prepare for the case was completely without merit.

To prevail on an ineffective assistance of trial counsel claim, petitioner must show: (1) that counsel's performance was deficient; and (2) actual prejudice.   Arroyo has failed to meet the first prong of the *Strickland* standard, as there has been more than an adequate showing that Weinstein's representation met

---

[119]   July 2008 Order; § 440.30(4)(b).

[120]   *See id.*

[121]   *See id.*

[122]   *See id.*

the objective standard of reasonableness, as highlighted in the 440.10 decision. Moreover, even if trial counsel's performance was deficient, any alleged deficiencies did not result in actual prejudice to petitioner's case.

Because petitioner has failed to show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States",[123] petitioner's application for habeas relief on this ground is denied.

## V.   CONCLUSION

For the foregoing reasons, Arroyo's section 2254 Petition is denied. The remaining issue is whether to grant a certificate of appealability ("COA").  For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[124]  A "substantial showing" does not require a petitioner to demonstrate that he would prevail on the merits, but merely that reasonable jurists could debate whether "the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed

---

[123]   28 U.S.C. § 2254(d).

[124]   *Id.* § 2253(c)(2).

constitutional right."[124]  A "substantial showing" does not require a petitioner to

demonstrate that he would prevail on the merits, but merely that reasonable jurists

could debate whether "the petition should have been resolved in a different manner

or that the issues presented were 'adequate to deserve encouragement to proceed

further.'"[125]  Petitioner has made no such showing.  Accordingly, I decline to grant

a certificate of appealability.  The Clerk of the Court is directed to close this case.


                                        SO ORDERED:


                                        Shira A. Scheindlin
                                        U.S.D.J.


Dated:        New York, New York
              December 7, 2011


---

[124]     *Id.* § 2253(c)(2).

[125]     *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*,
463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)).  *Accord
Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d
207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate
whether the district court's dismissal of the petition was correct).

**-Appearances-**

**Petitioner (Pro Se):**

Luis Arroyo
DIN# 05-A-3821
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

**For Respondent:**

Andrew E. Seewald
Assistant District Attorney, New York County
One Hogan Place
New York, NY 10007
(212) 335-9664